IN THE

# COURT OF ERRORS AND APPEALS

## OF THE STATE OF NEW JERSEY,

### ON APPEAL FROM THE COURT OF CHANCERY.

#### MARCH TERM, 1871.

O'BRIEN, appellant, and HULFISH, respondent.

1. A mere defect of title is no defence to a bill for the foreclosure of a mortgage given for the purchase money of the mortgaged premises.

2. But where the vendee has been defrauded, the court will not permit, in a proper case, the mortgagee to compel the payment of the money without deduction, if such fraud and resulting damage are made to appear in the proper mode.

3. Such fraud, when the vendee is not in a position to rescind, must be set up by a cross bill.

The bill in this case was to foreclose a mortgage. The answer stated that the mortgage was given to secure part of the consideration money, the premises being conveyed by deed with covenants of warranty, &c., and that the title was defective, inasmuch as the complainant owned only three-fifths of the premises. The answer likewise averred that

during the negotiations leading to the purchase, both the complainant and his agent assured the defendant that the complainant had the entire title to the property, and that relying on such assurance, the defendant took the conveyance, and entered upon and improved and built upon the premises. The answer also contained an averment that the defendant believed that the complainant and his agent, at the time they made these representations, knew that they were false.

Exceptions were filed to all that part of this answer which related to a defect in the title of the complainant, and the appeal was from the order sustaining such exceptions. There was also an appeal from the final decree in the cause.

The opinion of the Chancellor is reported in 5 *C. E. Green* 230.

*Mr. Lytle* and *Mr. P. D. Vroom,* for appellant.

*Mr. Gifford* and *Mr. Williamson,* for respondent.

The opinion of the court was delivered by

THE CHIEF JUSTICE.

The cases cited in the opinion which the Chancellor read in this case, conclusively show that a mere defect of title is not a defence to a bill for a foreclosure of a mortgage given for the purchase money. This proposition has never, so far as I am aware, been judicially gainsayed, and, upon the argument before us, it was admitted to be the settled law.

The defence was rested on a different ground; the position being that the answer presented a fraud practiced on the defendant in the sale of this property, and that this circumstance varied this case from the class embraced within the general rule above denoted.

I think there is no doubt that where a sale of real property is effected by deceit, and a mortgage given for the whole or a part of the purchase money, relief in equity will be given to the party defrauded in a suit on the mortgage,

whenever such course is necessary to reach a just result. Fraud, as a general rule, gives jurisdiction to a court of equity, and there can be no reason why, when the process of foreclosure is being used as a means of giving effect to a deception, such process should not be so restrained and controlled as to prevent an injustice. Where a vendee, being let into possession, discovered that a bad title had been fraudulently put upon him, it was decided in *Edwards* v. *M'Leay, Cooper's R.* 308, that he was entitled, although not evicted, to have the conveyance set aside and the purchase money returned. Upon this principle the present defendant, if in a situation to rescind, could require a return of that portion of the purchase money already paid, and a cancellation of this mortgage. It appears, however, that he has improved the property by building upon it, and that he, therefore, cannot undo the contract, but this circumstance cannot, in any degree, affect his right to the aid of the court. If it be true, as he asserts, that he has been cheated into an agreement to pay more for the title to this property than it is worth, a court of conscience will not permit the excess over what is justly due to be exacted. For it is quite a mistake to suppose that because the defendant has not been evicted he has sustained no damage. If the defendant should never be disturbed in the enjoyment of this property by those who own, as it is alleged, two-fifths of it, still, he must inevitably suffer a serious loss, for a perpetual cloud will rest upon his title, and his property will not bring, in the market, anything like its fair value. To the extent of this injury, he has a present claim for compensation, and based upon this ground an action at law would lie. Nor would an eviction be an essential to such a proceeding, for its effect would be merely to enhance the damages. So, too, on this same foundation of fraud and existent damage, equity would take cognizance of the matter, even while the person defrauded was in the undisturbed possession of the land. In cases in which there is no fraud, but a naked failure of title and covenants of warranty, there can be no relief in equity

before eviction, or at least before a suit looking towards that result; and this is on the ground that until such event the vendee has sustained no legal wrong.  A vendor who has warranted the title is not in default until after the vendee has been, either actually or constructively evicted, and, consequently, before a dispossession, it is entirely consistent with principle for a court of equity to permit the vendor to collect the full amount of the purchase money.  But the case is different where a vendee has been drawn into a losing bargain by the false representations of the vendor; because, in such a juncture, a present injury has been sustained, and a present right of action exists.  By force of such circumstances, the right to equitable relief becomes unquestionable, and it is often the preferable, and sometimes the only adequate mode.  " It remains to inquire," says Mr. Butler, in his note to *Coke Litt., tit. Warranty* 384 *a,* "what remedy a person purchasing under a defective title has, exclusively of the purchaser's warranty or covenants, or where the title is subject to a defect which the warranty or the covenants do not reach.  In every case where the seller conceals from the purchaser the instrument or the fact which occasions the defect, or conceals from him an encumbrance to which the estate is subject, it is a fraud, and the purchaser has the remedy of an action on the case, in the nature of an action of deceit. But a judgment obtained after the death of the seller, in an action of this nature, can only charge his property as a simple contract debt, and will not, therefore, except under very peculiar circumstances, charge his real assets.  A bill in chancery, in most cases, will be found a better remedy.  It will lead to a discovery of the concealment, and the circumstances attending it, and may, in some cases, enable the court to create a trust in favor of the injured purchaser."  See, also, to the same effect, 1 *Fonblanque on Equity* 365.  Assuming, then, the statements of the answer in the present suit to be true, the defendant could, before an ouster, sue at law for damages arising from the fraud in question, and, consequently, he has a clear right to relief, on the same ground,

O'Brien *v.* Hulfish.

in a court of equity. It is a plain dictate of common justice that the complainant, under such circumstances, should be required, before receiving the money due on this mortgage, to indemnify the defendant, as far as practicable, for the loss which he has sustained, and also for his probable future loss, by reason of the alleged deception.

Thus far it does not appear to me that the questions involved in this case are open to any doubt.

But the really debatable point, and the one which was principally discussed on the argument, is, whether this defence of fraud can be set up in the answer, or must form the subject of a cross-bill. The defence was overruled upon exceptions to the answer, and it seems to me that this is the correct practice upon the assumption that the fraud cannot be taken advantage of by an answer, because, if as a defence it is altogether inefficacious, it is unmistakably impertinent. Everything is impertinent which can have no legal or equitable value or effect in the cause. If, then, the fraud in question could be presented on the record only in the form of a cross-bill, it was properly struck out from the answer as being irrelevant. The question, therefore, recurs : how must the alleged fraud be pleaded ? I am of the opinion that it cannot be set up as a pure defence, as has been attempted in the answer now under consideration. In proof of this view we have, I think, but to analyze this bill and answer : the bill claims the money secured by the mortgage ; the answer declares that the defendant was deluded into taking an infirm title, and asks to be dismissed from the court without paying the money, or any part of it. Now, it seems to me that if the effect of the fraud would be to dispense with the payment of this money, then this pleading would be correct. But this result does not follow from the fact of fraud, and the consequence is, the defendant cannot stand on this ground. The defendant, as he is not in a situation to rescind the contract, must seek to have his damages assessed, and such other relief as the circumstances may require ; and this would not be interposing a mere

defence to the complainant's demand of the money, but would be asking affirmative relief. In accordance with the strict rules of equity practice, assistance of this character can be obtained only by means of an original or cross bill.

This was the rule enforced in *Miller* v. *Gregory*, 1 *C. E. Green* 274, a case which, with respect to every essential, was similar to that now under review. It was a proceeding to foreclose a mortgage, and the defence was obtained by false and fraudulent representations whereby the defendant had been induced to purchase the mortgaged premises at a price greatly beyond their real value. This defence was overruled, Chancellor Green saying: "It draws in question the fairness and validity of the sale made by the complainant to the defendant, and seeks to impeach the contract on which the title is founded. These matters, if available at all as a defence to this suit, can only be drawn in question by a cross-bill. The complainant is entitled to the benefit of his answer to these charges of fraud." There can be no doubt that this case is so completely in point that it would have to be overruled if this court should adopt the doctrine that the present defence can be advanced in the form of an answer. The decision is of the greatest weight, and if I had any doubt on the subject, I should yield implicitly to its authority. But, as I have already remarked, the rule of pleading seems to me to be unquestionably settled, and I have found no case in which fraud in a sale of land has been set up in an answer, the defendant being in the undisturbed possession of the property. Upon the argument counsel likened the case of fraud to that of an eviction where a warranty of title exists, and it was said that such eviction could be set up in the answer. But the two cases are not alike; for, on the occurrence of an eviction, the facts are of a simple character, and the right of the defendant is to have a return of the purchase money, or a deduction according to a fixed standard; but, on the contrary, fraud gives rise to a counter claim, the amount of damages being wholly unliquidated and dependent on the circumstances of the particular

O'Brien *v.* Hulfish.

transaction. It is true that since the statute authorizing the complainant to waive the verification of his answer by the defendant, the utility of the cross bill in cases of this kind has considerably lessened. The defendant cannot now be said to be entitled to the benefit of his oath as annexed to his answer on the question of fraud, and it may, consequently, be a subject for consideration whether the rule of pleading requiring a cross bill may not, in many instances, be advantageously relaxed. But this is a question which appeals for solution to the Court of Chancery alone, for a decision of that court, holding the parties to an observance of the established rules of pleading, cannot, certainly, with any propriety, be called in question here. And it should also be remarked that even if a cross bill could be dispensed with, still, the answer in the present case could not be regarded as sufficient, inasmuch as it does not raise the proper issue. The only point it has attempted to place in controversy is, whether the defendant is not absolved from the payment of the money due on the mortgage, in consequence of the fraud of the complainant. The true point for decision is, how much has the defendant been injured, and what means should be adopted for his protection? And this point the answer has not put it in the power of the court to adjudge. The defendant has not asked that his damages should be assessed, and in the absence of such asking the court has not the competency to adjust them. This answer, therefore, would be insufficient, even though a cross bill was not indispensable.

The interlocutory decree appealed from should be affirmed.

The final decree appears, from inadvertence, to have been irregularly entered. As the whole of the answer was not embraced by the exceptions, it would seem that the master's report should not have been confirmed without a rule *nisi*, and that the case should also have been set down upon the argument list. And even if the answer is to be regarded as altogether suppressed, the decree was entered at too early a period, as the statute gives to the defendant thirty days,

after his answer is adjudged insufficient, to file a second or further answer. *Nix. Dig.* 110, § 31. But this irregularity cannot be taken advantage of here, as it is not comprised in the reasons contained in the petition of appeal. The error, however, is important in this respect, that it relieves this court from the apprehension that the defendant, having possibly a meritorious case, will be shut out from a hearing by a mere lapse in pleading. Upon an application to the Chancellor, this final decree will, doubtless, be set aside on account of the irregularity above referred to, and thus the way will be opened to put the case in such a course of pleading, by cross bill or otherwise, as will lead to the attainment of an equitable result.

As the case stands, the final decree must also be affirmed.

The affirmance in° this court of both the interlocutory and final decree, should be without prejudice to an application on the part of the appellant to the Chancellor to modify, open, or set aside either or both of said decrees, so as to reach the merits of the case.

The whole court concurred.